## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REPUBLICAN NATIONAL COMMITTEE,
310 First Street, SE
Washington, D.C. 20003,

        Plaintiff,

        v.

UNITED STATES DEPARTMENT OF STATE,
320 21st Street, NW
Washington, D.C. 20451

        Defendant.

Civil Action No. _____

## **COMPLAINT**

    This November, the people of the United States will decide who will serve as their next President. They should do so with access to as much information as possible about all of the candidates' fitness for this Nation's highest office.

    To that end, the Republican National Committee (RNC) files this suit under the Freedom of Information Act (FOIA) seeking records relating to former Secretary of State, and leading candidate to become the Democratic Party's presidential nominee, Hillary Clinton's tenure at the U.S. Department of State. For over a year now, rarely a day has passed without some mention in the news of Secretary Clinton's use of a private email server. *See, e.g.*, Marc A. Thiessen, *Clinton's Email Excuses are Falling Apart*, Washington Post (Jan. 25, 2016); Editorial Board, *The Voters Need Answers about the Clinton Emails*, Washington Post (Feb. 7, 2016); Rosalind S. Helderman & Tom Hamburger, *Clinton, on Her Private Server, Wrote 104 Emails the Government Says Are Classified*, Washington Post (Mar. 5, 2016). What began as a story about an email server has now expanded to include questions concerning the State Department's relationships with private Clinton organizations (like the Clinton Foundation) during Secretary Clinton's tenure. *See, e.g.*, Byron Tau & Rebecca Ballhaus, *Subpoena Said to be Issued to the Clinton Foundation*, Wall St.

J. (Feb. 11, 2016). Those allegations raise questions about Secretary Clinton's fitness to serve as President—and the American people deserve to know the truth behind them before the primary season runs its course, before the Democratic Convention begins on July 25, 2016, and certainly before the general election on November 8, 2016.

Last September, the RNC requested records under FOIA relating to Secretary Clinton and State Department staffers who have been linked to Clinton's evolving email saga. In particular, the RNC requested forms and documents acknowledging the identified individuals' agreement to follow State Department protocol for handling confidential information, verifying their participation in mandatory document-classification training, and demonstrating their use of formal channels for presenting dissenting views on foreign policy issues. More than five months later, the State Department has not made a determination about those requests (as FOIA requires), let alone provided any responsive records. With the presidential election fast approaching, the delay must end.

The very purpose of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors" like Secretary Clinton "accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1976). Yet the State Department threatens to deprive the American public of critical information needed to make an informed vote in 2016. That cannot happen. This Court should require the State Department to meet its statutory disclosure obligations—and to do so with haste.

## PARTIES

1.      The Republican National Committee (the Plaintiff) is an unincorporated political committee with headquarters in Washington, D.C.

2.      The United States Department of State (the Defendant) is an agency within the meaning of 5 U.S.C. §552(f)(1) that has possession, custody, and control of records that the RNC seeks under FOIA.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B) because the State Department, an agency of the United States Government, is headquartered and resides in this District.

5.      The RNC is deemed to have exhausted all its administrative remedies under 5 U.S.C. § 552(a)(6)(C) because the State Department has failed to make a determination and provide notification of that determination within the statutorily mandated time limit of twenty working days after receiving the requests. 5 U.S.C. § 552(a)(6)(A)(i).

## BACKGROUND

6.      FOIA "focuses on the citizens' right to be informed about what their government is up to" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "[D]isclosure, not secrecy, is the dominant objective." *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted). Indeed, one of President Obama's first acts as President was to state his administration's approach to FOIA, instructing agency heads that "the Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails . . . . Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve." Presidential Memorandum, Freedom of Information Act, 74 Fed. Reg. 4,681, 4,683 (Jan. 21, 2009).

7.      In late March 2013, a hacker known as "Guccifer" infiltrated the email account of former White House advisor Sidney Blumenthal. Among the emails unearthed in the hack was a series of memos about the Benghazi terrorist attacks that were sent to then-Secretary Clinton's private *clintonemail.com* email address. It was later discovered that Secretary Clinton exchanged more than a hundred emails with Blumenthal—who had no security clearance at the time—some containing information that has since been designated classified. Josh Gerstein, *Clinton's Emails from Blumenthal Spark Tension*, Politico (Oct. 22, 2015).

8.      The public's interest in Secretary Clinton's use of a private email server to send and receive classified material intensified two years later. On March 2, 2015, the New York Times reported that Secretary Clinton's exchange with Blumenthal was not an outlier: Secretary Clinton had used her personal email account exclusively to conduct government business during her tenure as Secretary of State. *See* Michael S. Schmidt, *Clinton Used Personal Email at State Dept.*, N.Y. Times, Mar. 3, 2015, at A1. Secretary Clinton did not even have an assigned government email address, and she reportedly did nothing to preserve her emails on government servers (even though the Federal Records Act required her to do so). *Id.*

9.      The New York Times article raised questions about Secretary Clinton's mishandling of government secrets. To date, the State Department has retroactively marked as classified more than 2,000 emails on Secretary Clinton's private server; that includes marking some at the government's most restricted level. Josh Gerstein, *State Dept. Marks Three More Clinton Emails at "Secret" Level*, Politico (Feb. 13, 2016). The FBI is now reportedly investigating Secretary Clinton's mishandling of classified material for potential criminal violations. *See* Steven Lee Myers, *Unclassified Emails May Have Consequences for a Key Deputy*, N.Y. Times, Feb. 27, 2016, at A13; *see also* Michael B. Mukasey, *Clinton's Emails: A Criminal Charge Is Justified*, Wall St. J. (Jan. 21, 2016).

10.     Former Secretary Clinton is seeking, and is considered the leading candidate to secure, the Democratic Party's presidential nomination. Clinton's actions while Secretary of State—and the actions of those senior staffers with whom she worked most closely and supervised—are manifestly relevant to whether she is fit to lead this country. Public scrutiny of her tenure at the State Department is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *see also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002) ("Democracies die behind closed doors.").

11.     That scrutiny must happen before the American people cast their ballots. As a general matter, "[s]tale information is of little value." *Payne Enters., Inc. v. United States*, 837

F.2d 486, 494 (D.C. Cir. 1988). In an election year, stale information is of no value at all. That is reason all the more for this Court to order expedited disclosures to the RNC's FOIA requests.

## THE RNC'S REQUESTS

12.     On September 28, 2015, the RNC made three separate FOIA requests for information relating to Secretary Clinton's tenure at the State Department. Each request seeks records concerning Secretary Clinton and up to eleven other State Department staffers with close ties to Clinton's mishandling of classified government documents. Those individuals are Philippe Reines, Anne-Marie Slaughter, Dennis Cheng, Cheryl Mills, Huma Abedin, Jacob Sullivan, Andrew Shapiro, Caitlin Klevorick, Kris M. Balderston, Patrick F. Kennedy, and Bryan Pagliano (collectively, along with Secretary Clinton, the "Designated Individuals").

13.     Philippe Reines began as Senior Advisor to Secretary Clinton but was later promoted to Deputy Assistant Secretary of State. Reines, referred to by some as Secretary "Clinton's principal gatekeeper" (Amy Chozick, *Madam Secretary of the Universe*, N.Y. Times Magazine, Jan. 26, 2014, at MM26), reportedly sent numerous emails to Clinton's private account, including some that have since been marked classified. Lachlan Markay, *Email to Clinton Contained Sensitive U.S. Intelligence Info*, Washington Free Beacon (Jan. 11, 2016).

14.     Anne-Marie Slaughter served as the Director of Policy Planning under Secretary Clinton between January 2009 and February 2011. Publicly released emails show that Slaughter sent emails to Secretary Clinton's private email address while Slaughter was working at the State Department. Jena McGregor, *In Clinton Emails, Anne-Marie Slaughter Talks About Work-Life Balance*, Washington Post (Sept. 2, 2015).

15.     Dennis Cheng served as a top fundraiser for Secretary Clinton's 2008 presidential campaign before becoming Deputy Chief of Protocol under Clinton at the State Department. Typifying the revolving door between Secretary Clinton's government affairs and the Clinton family's private endeavors, in 2011 Cheng left his role with the State Department to become the Chief of Development for the Clinton Foundation—a move that raised questions about his contact

with the agency before and after his tenure. Rosalind S. Helderman et al., *Clintons' Foundation has Raised Nearly $2 Billion —and Some Key Questions*, Washington Post (Feb. 18, 2015).

16.     Cheryl Mills is a longtime Clinton aide who served as Secretary Clinton's Chief of Staff at the State Department. A substantial number of now-classified emails were reportedly sent to or from Mills's government email account. S.A. Miller & Stephen Dinan, *Hillary Clinton, Inner Circle Responsible for Most Classified Emails*, Washington Times (Sept. 3, 2015). Mills is also reported to have shared classified information with the Clinton Foundation. Rachel Blade, *Mills Shared Now-Classified Info with Clinton Foundation*, Politico (Oct. 6, 2015). Mills has been linked to previously mishandled FOIA responses that failed to disclose information about Secretary Clinton's private email server. Carol D. Leonnig & Rosalind S. Helderman, *State Department Gave "Inaccurate" Answer on Clinton Email Use, Review Says*, Washington Post (Jan. 6, 2016).

17.     Huma Abedin, regarded by many as Clinton's closest confidant, served as Deputy Chief of Staff during Secretary Clinton's entire tenure at the State Department. William D. Cohan, *Is Huma Abedin Hillary Clinton's Secret Weapon or Her Next Big Problem?*, Vanity Fair, Feb. 2016. Like her boss, Abedin—one of the few staffers with a confirmed clintonemail.com email address—also reportedly conducted government business using a private email account. Stephan Dinan, *State Dept. Confirms Clinton Aides had other Unreported Email Accounts*, Washington Times (Aug. 14, 2015). While working at the State Department, Abedin also held jobs with as many as four different employers (including the Clinton Foundation), raising questions about potential conflicts of interest and misuse of government secrets. Rosalind S. Helderman & Tom Hamburger, *How Huma Abedin Operated at the Center of the Clinton Universe*, Washington Post (Aug. 27, 2015).

18.     Jacob Sullivan, former Director of Policy Planning and Deputy Chief of Staff at the State Department, handled some of the most pressing policies and international crises during Secretary Clinton's tenure at the State Department. *See* Steven Lee Myers, *Unclassified Emails May Have Consequences for a Key Deputy*, N.Y. Times, Feb. 27, 2016, at A13. Regarded as the "principal conduit" to Secretary Clinton, Sullivan is linked to more classified emails than any other

Clinton staffer. In fact, he reportedly wrote many of the emails that have since been designated top secret. *Id.*; S.A. Miller & Stephen Dinan, *Hillary Clinton, Inner Circle Responsible for Most Classified Emails*, Washington Times, (Sept. 3, 2015). Sullivan now serves as the foreign policy advisor for Secretary Clinton's presidential campaign. *Id.*

19.    Andrew Shapiro served as Senior Advisor to Secretary Clinton at the State Department before assuming the role of Assistant Secretary of State for Political-Military Affairs. In the latter role, Shapiro brokered some of those most notorious State Department transactions with foreign nations, including the $29 billion arms sale to Saudi Arabia. Mark Landler & Steven L. Myers, *With $30 Billion Arms Deal, U.S. Bolsters Saudi Ties*, N.Y. Times, Dec. 30, 2011, at A10.

20.    Caitlin Klevorick, Senior Advisor to Secretary Clinton, was one of a select handful of employees to receive the "special government employee" designation. That designation allowed Klevorick to run a private consulting firm (CBK Strategies) that advised government and corporate clients about "policy and political advising" while at the same time accessing sensitive government information through her role at the State Department. Justin Elliott & Liz Day, *State Department Finally Releases List of "Special Government Employees,"* ProPublica (Jan. 30, 2014).

21.    Kris Balderston managed the State Department's Global Partnership Initiative during Clinton's term as Secretary of State. While serving in that role, Balderston actively recruited partnerships with high-dollar Clinton Foundation contributors, raising questions about potential conflicts of interest. Stephen Dinan & S.A. Miller, *Emails Show Clinton Foundation Shaped Policy*, Washington Times (Sept. 1, 2015); Maggie Haberman, *Emails Show Hillary Clinton Adviser Sidestepping Potential Conflict*, N.Y. Times Blog (Sept. 28, 2015).

22.    Patrick Kennedy is the State Department's Under Secretary for Management, a role that he also held during Clinton's tenure as Secretary of State. From the time that Secretary Clinton took office in the State Department, Kennedy reportedly knew about Clinton's "stand-alone [email] network" (Spencer S. Hsu, *U.S. Judge Orders Discovery to go forward over Clinton's Private Email System*, Washington Post (Feb. 23, 2016)) and may have even approved the setup.

Josh Gerstein, *Who Approved Clinton's Homebrew Server?*, Politico (Oct. 6, 2015). Kennedy is reportedly coordinating the State Department's response to both the Benghazi and the Clinton email investigations. Kimberly A. Strassel, *The Department of Hillary*, Wall St. J. (Sept. 3, 2015).

23.     Bryan Pagliano served as the technology director for Clinton's 2008 presidential campaign before joining Clinton's staff at the State Department. Clinton reportedly paid Pagliano out of her own pocket to set up and maintain the now-infamous private server in her Chappaqua, New York home. Rosalind S. Helderman & Carol D. Leonnig, *Clinton's Personally Paid State Department Staffer to Maintain Server*, Washington Post (Sept. 5, 2015). Pagliano, who did not disclose his off-the-book earnings to the State Department, invoked the Fifth Amendment when summoned to testify about Clinton's private server. Carol D. Leonnig, *Lawmakers Require Ex-Clinton Staffer Who Worked on E-mail Server to Appear*, Washington Post (Sept. 9, 2015). He was recently granted immunity for his cooperation in the criminal investigation. Adam Goldman, *Justice Dept. Grants Immunity to Staffer who set up Clinton Email Server*, Washington Post (Mar. 2, 2016).

24.     Through its first request, the RNC sought all Classified Information Nondisclosure Agreements (Standard Form 312) and Forms OF-109 that were signed by or relate to the Designated Individuals. (The RNC no longer seeks SF-312s or OF-109s signed by Secretary Clinton). The RNC also requested "any and all memoranda that relate to any DESIGNATED INDIVIDUALS and confirm attendance, nonattendance, or waive attendance at the security briefing reviewing Department of State procedures for handling classified materials necessary for an employee to receive a building pass indicating a security clearance." A true and correct copy of the RNC's first request is attached as Exhibit 1.

25.     Under State Department regulation 12 FAM 564.1, all State Department employees must read and sign an SF-312 Nondisclosure Agreement "at the time of entrance on duty and prior to being afforded access to national security (classified information)." 12 U.S. Dep't of State, Foreign Affairs Manual § 564.1 (rev. 10/01/99). By signing SF-312, an employee acknowledges that "unauthorized disclosure, unauthorized retention, or negligent handling of classified

information"—which includes both "marked or unmarked" records and any "information in the interest of national security"—"could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation." The signer also acknowledges that breach of the Nondisclosure Agreement may lead to "termination of any security clearances" or "termination of . . . employment" and agrees that misuse of classified information "may constitute a violation, or violations, of United States criminal laws" for which the United States may "prosecute me."

26.     Form OF-109, on the other hand, is signed at the close of an employee's tenure at the State Department. By signing Form OF-109, a departing State Department employee certifies, under penalty of perjury, that she has returned or turned over all official documents and records to the State Department. The records described in OF-109 include emails and are not limited to classified material.

27.     Through its second request, the RNC sought "[a]ny and all records" relating to the Designated Individuals that "reference attendance at, completion of, or waiver of the requirement to complete," the "training in proper classification and declassification" imposed by Executive Order 13526 on original and derivative classification authorities.[1] The timeframe for that request is January 1, 2009 to December 31, 2013. A true and correct copy of the RNC's second request is attached as Exhibit 2.

28.     Through its third request, the RNC asked for "[a]ny and all records, correspondence, and memos, in any format, that reference or otherwise related to any 'dissent channel cables' that were sent to any DESIGNATED INDIVIDUALS[2] or name, mention, or

---

[1] See Exec. Order No. 13,526, 75 C.F.R. 705 (2010) ("All original classification authorities must receive training in proper classification (including the avoidance of over-classification) and declassification as provided in this order and its implementing directives at least once a calendar year."); *Id.* ("Persons who apply derivative classification markings shall receive training in the proper application of the derivative classification principles of the order, with an emphasis on avoiding over-classification, at least once every 2 years.").

[2] Bryan Pagliano was not among the "Designated Individuals" in the third request.

reference any DESIGNATED INDIVIDUALS."[3] The third request covers the period from January 21, 2009 to February 1, 2013. A true and correct copy of the RNC's third request is attached as Exhibit 3.

29.     On October 6, 2015, the State Department sent separate letters acknowledging that it had received the RNC's three FOIA requests and assigning Case Control Numbers F-2015-15018, F-2015-15019, and F-2015-15022. And then, silence. The State Department never disclosed any of the requested materials or explained why it cannot comply with its statutory obligations. *See Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011) ("We have often noted 'the Act's goal of broad disclosure' and insisted that the exemptions be 'given a narrow compass.'"). True and correct copies of the State Department's acknowledgement letters are compiled in Exhibit 4.

30.     Because the State Department failed to communicate its "determination" on the RNC's FOIA requests within twenty working days (5 U.S.C. § 552(a)(6)(A)), the RNC has constructively exhausted its administrative remedies and may proceed directly to this Court. *See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013) (a requestor exhausts its remedies unless, within the relevant time period, the agency "inform[s] the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions"); *id.* at 189-90 ("[I]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.").

---

[3] "The Dissent Channel was created to allow its users the opportunity to bring dissenting or alternative views on substantive foreign policy issues, when such views cannot be communicated in a full and timely manner through regular operating channels or procedures, to the attention of the Secretary of State and other senior State Department officials in a manner which protects the author from any penalty, reprisal, or recrimination." 2 U.S. Dep't of State, Foreign Affairs Manual § 071.1(b) (rev. 9/28/2011).

31.     Time is of the essence. The information that the RNC seeks—which bears on Secretary Clinton's fitness to serve as the next President of the United States—will have no value unless it makes its way into the public's hands before the election. The RNC and the public will suffer irreparable harm if the requested information does not come to light before votes are cast.

32.     The State Department's burden to produce the requested documents is minimal when compared to the American people's substantial interest in vetting a presidential nominee. Indeed, the burden on the State Department is minimal even if considered alone: The agency has fielded FOIA requests relating to Secretary Clinton's email for the last year, so it should already be in a position to disclose many of the communications that the RNC seeks.

33.     Finally, no "exceptional circumstances" exist that would justify giving the State Department additional time to respond to the RNC's FOIA requests. 5 U.S.C. § 552(a)(6)(C)(ii). If anything, with the election looming, there is every reason to order the State Department to comply with the RNC's FOIA requests at double speed.

## COUNT I: VIOLATION OF FOIA, 5 U.S.C. § 552

34.     The State Department is unlawfully withholding records that the RNC requested under 5 U.S.C. § 552.

35.     The State Department's failure to disclose the requested records has irreparably injured the RNC and will continue to do so until the State Department discloses the records.

## PRAYER FOR RELIEF

The RNC requests the following:

1.     Expedited consideration under 28 U.S.C. § 1657;

2.     A declaratory judgment that the State Department has improperly withheld the requested records under FOIA;

3.     An order directing the State Department to respond and produce the requested documents by July 1, 2016, in time for the Democratic National Convention;

4.     Costs and reasonable attorneys' fees under 5 U.S.C. § 552(a)(4)(E);

5.     Any other relief that the Court deems appropriate.

Dated March 14, 2016.

Kelley Barnaby (D.C. Bar. No. 998757)
kelley.barnaby@alston.com
Edward T. Kang (D.C. Bar No. 1011251)
(*application for admission pending*)
edward.kang@alston.com
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Telephone: (202) 239-3300

Brian D. Boone (D.C. Bar No. 987633)
(*application for admission pending*)
brian.boone@alston.com
D. Andrew Hatchett
(*application for admission pending*)
andrew.hatchett@alston.com
ALSTON & BIRD LLP
101 S. Tryon Street
Charlotte, NC 28280
Telephone: (704) 444-1000

John R. Phillippe
jphillippe@gop.com
REPUBLICAN NATIONAL COMMITTEE
310 First Street, SE
Washington, DC 20003
Telephone: (202) 863-8638

*Counsel for Plaintiff Republican National Committee*